IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMALGAMATED TRANSIT UNION LOCAL 85, JAMES HANNA, SASHA CRAIG and, MONIKA WHEELER,<br><br>Plaintiffs,<br><br>vs.<br><br>PORT AUTHORITY OF ALLEGHENY COUNTY,<br><br>Defendant. | Civil Action No. 2:20-cv-1471 |

## COMPLAINT

AND NOW COMES Plaintiffs, Amalgamated Transit Union Local 85, James Hanna, Sasha Craig, and Monika Wheeler, by and through their undersigned counsel, Joseph J. Pass, Esquire and Patrick K. Lemon, Esquire, and Jubelirer, Pass & Intrieri, P.C. and files this Complaint against Defendant, Port Authority of Allegheny County, in support of which, Plaintiff avers the following:

## INTRODUCTION

1. Plaintiffs bring this action pursuant to 42 U.S.C. §1983 to bar Defendant Port Authority of Allegheny County from acting in violation of the First Amendment of the U.S. Constitution and Article I Section 7 and Section 20 of the Pennsylvania Constitution to deny Local 85 members from wearing face coverings with the message "Black Lives Matter." The content restrictions imposed by Defendant under color of state law are unreasonable in light of the purpose served, void for vagueness, overly broad, and inappropriately viewpoint-based, and are therefore

unconstitutional both on their face and as applied to this case, and additionally constitute a violation of the equal protection clause of the Fourteenth Amendment to the U.S. Constitution. Defendant's actions are designed to restrain Plaintiffs ATU Local 85, Hanna, Craig, Wheeler, and other members of the Plaintiff ATU Local 85 from their rights to free speech and freedom of association.

2. Plaintiff Local 85 as an organization has social goals including the improvement of race relations and seeks to promote positive political and social change as well as to represent members over the terms and conditions of their employment.

3. By its action, Port Authority of Allegheny County has tried to frustrate a purpose of Plaintiff Local 85 and its members and purports to restrict speech of members precisely when that speech promotes social justice and other union goals.  Port Authority's rule against speech seeks to eliminate what the Port Authority calls speech regarding "social justice".

4. The illegal and unconstitutional ban on political and social speech is set out in a uniform standards on July 23, 2020 in Exhibit A.  These standards are not "uniform" in restricting speech but rather restrict speech with social and/or political content.

5. Furthermore, the uniform standards were revised to ban such social and political messaging on facemasks.  The uniform standards were specifically revised after union members began to wear masks that said nothing more than "Black Lives Matter".

6. The rationale for banning all political and social messaging, and especially Black Lives Matter, is set forth in Exhibit B, which is a letter by Port Authority CEO Kelleman. In that announcement the Port Authority opines on the one hand that it endorses Black Lives Matter, but then threatens to discipline employees if they silently express support by wearing a mask stating

"Black Lives Matter." Such conduct is a per se violation of the employees' rights to free expression.

## PARTIES

7. Plaintiff Amalgamated Transit Union Local 85 (hereinafter referred to as "Union" or "Local 85") is an unincorporated voluntary association, a labor organization, the certified exclusive labor representative of a bargaining unit of employees employed by Defendant Port Authority of Allegheny County (hereinafter referred to as "Port Authority" or "PAT"), and is a subordinate body of the International Amalgamated Transit Union.

8. Plaintiff James Hanna is a member and an Executive Board Member of Local 85 and a bus operator employed by the Port Authority of Allegheny County.

9. Plaintiff Sasha Craig is a member of Local 85 and a First Level Supervisor/Instructor employed by the Port Authority of Allegheny County.

10. Plaintiff Monika Wheeler is a member of Local 85 and a First Level Supervisor/Instructor employed by the Port Authority of Allegheny County.

11. Defendant Port Authority is a public transportation authority and a municipal organization organized under the second class Port Authority Act 55 P.S. 55 1 et seq. which operates public transportation services in Allegheny County.

## JURISDICTION AND VENUE

12. This court has federal question jurisdiction under 28 U.S.C. §1331 because this action arises under 42 U.S.C. §1983 and the First and Fourteenth Amendment to the United States Constitution, as well as pendant jurisdiction over the Pennsylvania state constitutional law claims. *Kokkoner v. Guardio* 511 US 375 (1994).

13. Venue is proper in the Western District of Pennsylvania under 28 U.S.C. §1391 because Defendant is located in this district, Plaintiffs are located in this district, and the events and omissions giving rise to this claim occurred in this district.

## FACTUAL ALLEGATIONS AND CLAIMS

14. The Union and the Authority are parties to a collective bargaining agreement (hereinafter referred to as the "CBA") governing the terms and conditions of employment for a bargaining unit of employees employed by Defendant.

15. In addition, Plaintiff Union is the guardian of its members' rights and is likewise entitled to the protections of the U.S. and Pennsylvania Constitutions.

16. The Plaintiff Union represents and the Authority employs maintenance employees, first level supervisors, clerical employees, and bus drivers who operate busses and other vehicles that provide public transportation in Allegheny County.

17. Founded in 2013, Black Lives Matter (hereinafter "BLM") is an anti-racist social movement seeking to eradicate racial prejudices, seek equal justice, and build power to intervene in systemic violence inflicted on Black and Brown communities by state actors and vigilantes.

18. The BLM movement garnered widespread global support and attention in the wake of the murder of George Floyd by police while in police custody on May 25, 2020.

19. Support for BLM continued to swell worldwide throughout the summer of 2020.

20. The ATU International and Local 85 as organizations have fully endorsed and support the Black Lives Matter movement.

21. On or about July 23, 2020, Defendant unilaterally promulgated revisions to its "Uniform Standards for Port Authority Operators," a copy of which is attached as Exhibit A to this Complaint.

22. The relevant portion of the policy states: "Buttons, stickers, jewelry and clothing (including masks or other face coverings) of a <u>political or social protest nature are not permitted to be worn</u>." (Exhibit A at 4, emphasis added.)

23. The Authority did not bargain with the Union regarding the policy. Rather, the Authority promulgated the policy without any agreement with the Union.

24. Prior to promulgating its recent policy, employees of PAT had been wearing masks with a statement that "Black Lives Matter" without any adverse incident, without facing any discipline or threat of discipline, without any interference with their duties and responsibilities, and without any interruption in service being provided.

25. In the past, the Authority has repeatedly adopted, promoted, celebrated, and endorsed similar messages supporting, for instance:

    a. Pride Month in support of the LGBTQ + community;

    b. African American Heritage day to celebrate African American history;

    c. Women's rights;

    d. Support for the individuals and families victimized in the October 2019 massacre, mass shooting, and hate crime committed at the Tree of Life Synagogue in Squirrel Hill;

    e. Support for the victims and families of three slain Pittsburgh police officers in April of 2009;

    f. Union buttons and insignia in support of the Union and its role in protecting workers' rights to organize for their mutual aid and protection;

      g. The American flag; and,

      h. The Americans with Disabilities Act and promoting accessibility for individuals with disabilities.

26. This messaging has been prominently displayed on the interior and exterior of in service busses and in the Port Authority's official public statements and stances. Attached hereto as Group Exhibit C are photos of various public positions taken by Port Authority.

27. Union members have also donned buttons and similar paraphernalia promoting these messages in the past without causing any disruption and without facing discipline—including wearing masks that read "Black Lives Matter."

28. On September 3, 2020, Katharine Kelleman, the CEO of the Port Authority of Allegheny County publically stated on behalf of PAT that it is clear "First and foremost, this organization believes that Black lives matter. Period." (Exhibit B at 1.)

29. Port Authority has also adopted various policies against racial prejudice and in favor of equal opportunities regardless of race, religion, color, disabilities, sex, or creed.

30. On or about Wednesday, August 5, 2020, Plaintiffs Craig and Wheeler reported to work wearing face coverings with the message "Black Lives Matter" displayed on the front.

31. On that day, Port Authority management, in a blatant instance of censorship, informed Operators Craig and Wheeler that they would be suspended if they did not remove their BLM masks and instead don masks without such a message.

32. Refusing to surrender their right to passive, peaceful expression, Operators Craig and Wheeler did not remove their BLM masks.

33. As a result, the Authority refused to permit Plaintiffs Craig and Wheeler to continue their work.

34. Other members of the Union have likewise been suspended from work and/or disciplined for wearing such masks.

35. Prior to the announcement of the new policy, many members wore masks with the lettering BLM or Black Lives Matter without any incident or objection from the public or other workers.

36. On August 13, 2020, Plaintiff James Hanna, a duly elected "board person" a/k/a union steward was on PAT property conducting union business on behalf of Local 85 of the ATU. As an elected "board person" Mr. Hanna is charged with the responsibility of representing employees who are threatened with or are receiving discipline in the first step of the grievance procedure under the CBA between the Authority and the Union. While conducting a discipline hearing, a supervisor of PAT demanded that Mr. Hanna remove a face mask which he had been wearing as a result of the coronavirus with lettering across the front reading "Black Lives Matter."

37. Upon being told to remove the "Black Lives Matter" mask, Mr. Hanna refused to do so. He was given a direct order to remove it and again refused. He was then advised that PAT was canceling the remainder of the grievance hearings and was sent home and told to await a call for a disciplinary hearing to impose discipline upon him.

38. On August 26, 2020, Mr. Hanna attended a disciplinary hearing in which he was given a verbal warning as a result of his refusal to remove the "Black Lives Matter" mask and told that any further use of the mask would result in additional discipline up to and including discharge.

39. The Authority continues to ban the Black Lives Matter message from operator face coverings and has refused to reverse its unconstitutional policy.

40. This suppression of free expression plainly violates the employees' First and Fourteenth Amendment rights and their rights under Article I Section 7 of the Pennsylvania Constitution. It is an unreasonable restriction.

41. The ATU International Union as well as Local 85 support the Black Lives Matter movement, and the suppression of the individual Plaintiffs' rights to express the policy adopted by their organization is an abridgement of their freedom of association with groups that support racial equality.

42. The Union brought the unconstitutionality of the policy to the Authority's attention both verbally and in writing by letters dated August 6, 2020, and August 14, 2020. The Union stated its intention to file the instant lawsuit if the Authority did not allow Union members to wear masks bearing the message "Black Lives Matter."

43. The Authority refused to reverse its unconstitutional policy and restriction on employee free speech in support of the BLM movement.

44. The Authority's policy is an unlawful content-based regulation of high value speech.

45. The Authority's policy is an unconstitutional infringement upon the employees' right to freedom of expression and association.

46. As a content-based regulation, the Authority's policy is subject to strict scrutiny.

47. The Authority's policy is not the least restrictive means of achieving any compelling state purpose.

48. The Authority's policy also constitutes unconstitutional viewpoint discrimination, racially tainted, and motivated by animus towards the BLM movement, and equal justice.

49. The Authority's policy is overly broad and void for vagueness.

50. The disciplinary action and statements of the Authority are intended to, have, and are likely to continue to have a chilling effect on the speech and association rights of Local 85 members.

51. ATU Local 85 members have a First Amendment right and a right under Article I Section 7 and 20 of the Pennsylvania Constitution to speak on matters of public concern such as BLM and to express their views and opinions without discipline or reprisal by the Authority.

52. ATU Local 85 members have a constitutional right to associate with groups, including their bargaining representative, that advocate for equal justice regardless of race, religion, sex, color or disabilities.

53. By the acts set forth above, the Authority has taken adverse action against Local 85 members under color of law in response to those members' viewpoint, and in particular the content of their speech, as well as their association with the groups involved in the Black Lives Matter movement that advocate for equal justice in America.

54. By the acts set forth above, the Authority has threatened to take adverse action against Local 85 members because of the content of their speech, and for supporting the message of the ATU International, Local 85 of the ATU and the Black Lives Matter movement.

55. The U.S. Office of the Special Counsel has determined that support of the BLM movement is neither political nor partisan for purposes of the Hatch Act. (Exhibit D.)

56. The ATU Local 85 and its members have suffered and will suffer irreparable injury from such unlawful attempts to deter their speech and association rights.

57. The infringement on ATU Local 85 members' First Amendment rights and the rights under the PA Constitution are irreparable injuries.

58.     Absent an injunction protecting its members from retaliation for exercising First Amendment and PA Constitutional rights, plaintiffs have no adequate remedy at law.

## Count I
## 42 U.S.C. §1983
## Violation of the Employees Rights to Free Speech and Equal Protection Clause set forth in the First and Fourteenth Amendments

59.     Plaintiffs incorporate the above paragraphs as if fully set forth herein.

60.     By the acts set forth above, the Authority has adopted, promoted, celebrated, and endorsed certain messages to the public and permitted Union members to do the same during the course of their employment.

61.     By prohibiting Plaintiffs from peacefully and passively promoting the BLM movement on their face coverings, the Authority has imposed an unreasonable content-based restriction on Plaintiffs' speech, in violation of their rights under the First Amendment as incorporated by the Fourteenth Amendment to apply to the Commonwealth of Pennsylvania and its instrumentalities.

62.     By effectively prohibiting only the expression of support for the BLM movement, the Authority has engaged in viewpoint discrimination in violation of Plaintiffs' rights under the First Amendment as incorporated by the Fourteenth Amendment to apply to the Commonwealth of Pennsylvania and its instrumentalities.

63.     The Authority has explicitly imposed this prohibition as a matter of policy.

64.     The Authority has done so under color of state law.

## Count II
## 42 U.S.C. §1983
## Violation of the Employees Rights to the Freedom of Association as Guaranteed by Article I Section 7 and Section 20 of the Pennsylvania Constitution

65.     Plaintiffs incorporate the above paragraphs as if fully set forth herein.

66. By the acts set forth above, the Authority has adopted, promoted, celebrated, and endorsed certain messages to the public and permitted Union members to do the same during the course of their employment.

67. By prohibiting Plaintiffs from peacefully and passively promoting the BLM movement on their face coverings in support of Local 85 and ATU's policies of advocating on behalf of the Black Lives Matter movement, the defendant's action is an impediment to the plaintiffs' freedom of association.

68. The Authority's imposition of unreasonable content based restriction and rights of association is in violation of the rights under Article I Section 7 and 20 of the Pennsylvania Constitution.

69. The Authority has explicitly imposed this prohibition as a matter of policy.

70. The Authority has done so under color of state law.

71. The Union served a copy of this Complaint and Proposed Order of Court to counsel for Defendant Port Authority of Allegheny County by email and hand delivery to Defendant Port Authority of Allegheny County on September 30, 2020.

**WHEREFORE,** Plaintiffs respectfully requests that the Court enter a judgment against Defendant and grant the following relief:

   a. Declare Defendant's policy an unlawful restriction on employee free speech and association rights in violation of the First and Fourteenth Amendment and the Equal Protection clause and the U.S. Constitution as well as Article I Section 7 and 20 of the Pennsylvania Constitution;

   b. Enjoin Defendant from prohibiting employees from wearing masks with the message "Black Lives Matter";

    c.    Direct Defendant to rescind the discipline issued to the individual plaintiffs as well as all other members of Local 85 who have suffered adverse actions by the defendant as a result of their wearing a BLM mask and appropriate make whole remedy of any lost wages;

    d.    An award of Plaintiffs' reasonable attorneys' fees and costs incurred to bring this action; AND

    e.    Such further relief as the Court deems just and proper.

Respectfully submitted,

JUBELIRER, PASS & INTRIERI, P.C.

BY: */s/ Joseph J. Pass*
Joseph J. Pass, Esquire
Pa. I.D. #00044
jjp@jpilaw.com

*/s/ Patrick K. Lemon*
Patrick K. Lemon, Esquire
Pa. I.D. # 316438
pkl@jpilaw.com

219 Fort Pitt Boulevard
Pittsburgh, PA 15222
Phone: 412-281-3850
Fax: 412-281-1985
Pa. Firm #: 141