**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMALGAMATED TRANSIT UNION LOCAL 85, JAMES HANNA, SASHA CRAIG and MONIKA WHEELER, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:20–cv–01471–NR |
| v. | ) ) ) | Judge J. Nicholas Ranjan |
| PORT AUTHORITY OF ALLEGHENY COUNTY, | ) ) ) ) | *Electronically filed* |
| Defendant. | ) ) | |

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant Port Authority of Allegheny County ("Port Authority"), by and through its

undersigned counsel, and in accordance with Rule 12(b)(6) of the Federal Rules of Civil

Procedure, hereby moves to dismiss the claims set forth in the First Amended Complaint ("Compl."

or "Complaint").  In support of its motion, Port Authority alleges as follows:

**ALLEGATIONS IN THE COMPLAINT**

1.      Port Authority is a state–created entity that operates public transportation services

in Allegheny County.  Compl. at ¶ 13.

2.      Plaintiff Amalgamated Transit Union Local 85 ("Local 85") is an unincorporated

voluntary labor organization that is the certified exclusive labor representative of a bargaining unit

of employees employed by Port Authority.  *Id.* at ¶ 9.

3.      Plaintiffs James Hanna, Sasha Craig, and Monika Wheeler are members of Local

85.  *Id.* at ¶¶ 10–12.

**A.      The Former Uniform Policy**

4.      In late May 2020, the death of an African American male by the name of George

Floyd while in police custody resulted in widespread social protests throughout the United States.

*Id.* at ¶¶ 19–21.

5.      The anti–racist social movement known as Black Lives Matter garnered significant support in the summer of 2020 following Mr. Floyd's death.  *Id.* at ¶ 20.  Local 85 has endorsed and supports the Black Lives Matter movement.  *Id.* at ¶ 22.

6.      In July 2020, Port Authority amended its Uniform Standards for Port Authority Operators (the "Former Uniform Policy") that governed the uniforms it required certain of its employees to wear.  *Id.* at ¶¶ 4, 23.  That policy had previously stated, in the section entitled "Miscellaneous," that "[b]uttons and stickers of a political or social protest nature are not permitted to be worn."  *Id.*, Ex. 1 [ECF No. 17–1] at Page 3.  The amendment in July 2020 modified this language to state: "Buttons, stickers, *jewelry and clothing (including masks or other face coverings)* of a political or social protest nature are not permitted to be worn."  *Id.* (emphasis in Former Uniform Policy).

7.      After Port Authority clarified that the Former Uniform Policy's prohibition on political and social protest messages applied to masks and face coverings, several employees (including the individual Plaintiffs) violated that policy by wearing masks that stated "Black Lives Matter" while on duty.  Compl. at ¶¶ 30–38.

8.      In early September 2020, Port Authority's chief executive, Katharine Kelleman ("Kelleman"), sent a message to Port Authority employees to explain the reason for the prohibition on wearing masks containing political or social protest messages.  Compl., Ex. 3 [ECF No. 17–3].

9.      Kelleman stated that Port Authority fundamentally believes that Black Lives Matter.  *Id.*  However, Kelleman clarified that Port Authority's policy is not directed specifically to the Black Lives Matter movement or any other message, group, or ideology.  *Id.* at Pages 1–2.

10.     Kelleman explained that Port Authority's viewpoint–neutral policy is intended to

2

avoid the disruption that might arise if employees were permitted to use their uniforms to convey

political or social protest messages of their choosing.  *Id.* at Page 2.  She noted that, if Port

Authority employees were permitted to wear masks that stated Black Lives Matter, then Port

Authority would be legally required to permit employees to wear face masks that convey messages

on any and all other political or social justice topics.  *Id.* at Pages 2–3.

**B.     The Current Uniform Policy**

11.     In mid–September 2020, Port Authority implemented additional revisions to its

uniform policy.  Compl. at ¶¶ 5, 24.  The new policies — entitled "Uniform Standards for Port

Authority Operators" and "Uniform Guidelines for Port Authority Transportation Supervisors,

Route Foremen, Inspectors" (collectively, the "Current Uniform Policy") — added an entire new

section entitled "Masks and Other Face Coverings."  *Id.*, Ex. 2 [ECF No. 17–2] at Pages 3–4 and

7–8.

12.     Under the Current Uniform Policy, employees can no longer wear masks bearing a

logo, image, or message of their choice.  *See id.*  Employees must now wear one of the following:

> (a)     a black or navy mask provided by Port Authority containing the "Port Authority" logo;
>
> (b)     a Port Authority–approved mask provided by Local 85 containing an "ATU Local 85" logo;
>
> (c)     a solid black or blue mask (or gaiter–style face covering) provided by Port Authority or acquired by the employees on their own; or
>
> (d)     an N–95 mask, KN–95 mask, or clear face shield as long as the mask or face shield head band is solid white, black, or blue and does not contain any logo, image, or text.

*Id.*

**C.     The Alleged Constitutional Violations**

13.     In their Complaint, Plaintiffs allege that Port Authority's refusal to allow employees

to wear masks that state "Black Lives Matter" while on duty violates the First Amendment to the

United States Constitution.   Compl. at ¶¶ 62–67.  Plaintiffs allege that the refusal also violates

their rights under Sections 7 and 20 of the Pennsylvania Constitution. *Id.* at ¶¶ 68–73.

14.     Plaintiffs appear to allege that Port Authority engaged in unreasonable content–

based discrimination because its decision to limit employee speech is (1) subject to strict scrutiny

under the First Amendment and (2) not the least restrictive means of achieving any compelling

state purpose.  *Id.* at ¶¶ 47–50.

15.     Plaintiffs also allege that Port Authority engaged in viewpoint discrimination in

order to suppress speech that supports of the Black Lives Matter movement.  *Id.* at ¶¶ 51, 65.

## FAILURE TO STATE A CLAIM

16.     In ruling on a motion to dismiss, the trial court considers only well–pleaded

allegations of fact set forth in the complaint.  *Pension Benefits. Guar. Corp. v. White Consol.

Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The court does not consider legal conclusions or

unsupported assertions.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009); *Morse v.

Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

17.     The allegations in the complaint cannot contradict the complaint's exhibits.

*Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 111–12 (3d Cir. 2018).  If the plaintiff's

allegations conflict with the exhibits, the court must accept the exhibits to be true.  *Id.*

**A.      Plaintiffs Have Not Alleged Facts That (If True) Would Constitute an
            Unlawful Restriction on Employee Speech**

18.     The U.S. Supreme Court has long held that "the State has interests as an employer

in regulating the speech of its employees that differ significantly from those it possesses in

connection with regulation of the speech of the citizenry in general."  *Pickering v. Bd. of Educ.*,

391 U.S. 563, 568 (1968).

4

19.     When assessing a government policy prohibiting its employees from speaking as citizens on matters of public concern, the court must balance the employee's interest in commenting on the matter with the government's interest in providing effective and efficient public service.  *Nichol v. Arin Intermediate Unit 28*, 268 F. Supp. 2d 536, 556 (W.D. Pa. 2003).  The time, place, manner, and context of the employee's proposed speech are important factors.  *Connick v. Myers*, 461 U.S. 138, 150 (1983).

20.     If the employee's speech on a matter of public concern is likely to interfere with the employer's ability to provide effective public service, the employer may prohibit that speech. *Waters v. Churchill*, 511 U.S. 661, 680 (1994); *Munroe v. Central Bucks Sch. Dist.*, 806 F.3d 454, 474 (3d Cir. 2015).

21.     Port Authority has a significant interest in ensuring that its public transportation services are not disrupted by personal messages that their employees may choose to display on their Port Authority uniforms while on duty.  *See Lehman v. City of Shaker Heights*, 418 U.S. 298, 302–04 (1974); *Risk v. Burgettstown Borough, Pa.*, Civil Action No. 05–1068, 2007 WL 2782315, at *2 (W.D. Pa. Sept. 21, 2007).

22.     The Current Uniform Policy imposes a minimal restriction on employee speech because it only prohibits speech at work.  Port Authority operators are free to engage in political or social protest activities outside of work.

23.     As a matter of law, Port Authority's substantial interest in avoiding debate, hostility, and disruption among its employees and customers — which can reasonably be expected to arise from political or social protest messages that individual employees conveyed on their Port Authority uniforms — substantially outweighs the limited First Amendment interest that Port Authority employees possess in engaging in social protest activities while on duty.

5

**B.      Plaintiffs Have Not Alleged Facts That (If True) Would Suggest That Port Authority Engaged in Viewpoint Discrimination**

24.     Viewpoint discrimination occurs when "the government targets not the subject matter, but particular views taken by speakers on a subject." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

25.     To establish viewpoint discrimination, the plaintiff cannot simply allege that the defendant knew that its actions would adversely (and potentially disproportionally) affect a particular viewpoint. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009).  Plaintiffs must instead plead facts that would establish that the defendant took "a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Id.*

26.     A viewpoint–neutral prohibition of a particular subject matter is lawful even if the government enacted the prohibition in response to a particular speaker's activities.  *Reilly v Harrisburg*, 336 F. Supp. 3d 451, 459–60 (M.D. Pa. 2018).

27.     Accordingly, the allegation that Port Authority amended the viewpoint–neutral Former Uniform Policy in July 2020 as a response to the Black Lives Matter movement does not give rise to an inference of discrimination against any Black Lives Matter viewpoint.

28.     Moreover, the Former Uniform Policy ***already prohibited*** political and social protest messages on employee uniforms in the form of buttons or stickers — the amendment in July 2020 merely made clear that the prohibition applied equally to jewelry, clothing, and face coverings.  Compl., Ex. 1 [ECF 17–1] at Page 3.  It is therefore absurd to suggest that Port Authority amended of the Former Uniform Policy because of its desire to silence messages involving the Black Lives Matter movement.

29.     Plaintiffs' viewpoint discrimination claim fails as a matter of law because they admit in the Complaint that Port Authority has publicly endorsed and supports the Black Lives

Matter movement.  Compl. at ¶ 8 and Ex. 3 thereto.

30.     The admission that Port Authority endorses and supports the Black Lives Matter movement precludes any inference that Port Authority (1) possesses an animus to that movement and (2) adopted a viewpoint–neutral prohibition on face coverings containing political and social protest messages as subterfuge to prohibit only those specific messages involving the Black Lives Matter movement.

For the foregoing reasons, and those set forth more fully in the accompanying memorandum of law, the Court should grant the Motion and dismiss all claims in the Complaint with prejudice.  A proposed Order of Court is attached.

Respectfully submitted,

**CAMPBELL DURRANT, P.C.**

By: /s/ Brian P. Gabriel
    Brian P. Gabriel
    Pa. I.D. No. 73132
    535 Smithfield Street, Suite 700
    Pittsburgh, PA 15222
    (412) 395–1267

Gregory J. Krock
Pa. I.D. No. 78308
**McGUIREWOODS LLP**
Tower Two–Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222–3142
(412) 667–6042

*Counsel for Defendant Port Authority*
*of Allegheny County*

7

## **CERTIFICATE FOR RULE 12 MOTION**

I hereby certify that I conferred with Plaintiffs' counsel in good before filing the within

Rule 12 motion to determine whether the defects in the First Amended Complaint could be cured

by way of amendment.

/s/ Gregory J. Krock
Gregory J. Krock

**McGUIREWOODS LLP**
Tower Two–Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222–3142
(412) 667–6042

*Counsel for Defendant Port Authority
of Allegheny County*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies the foregoing **Motion to Dismiss First Amended**

**Complaint** was filed via the Court's CM/ECF system on the 5th day of November, 2020, which

system will effectuate service upon the following counsel of record:

Joseph J. Pass
Patrick K. Lemon
JUBELIRER, PASS & INTRIERI, P.C.
219 Fort Pitt Boulevard
Pittsburgh, PA 15222
*Counsel for Plaintiffs*

/s/ Brian P. Gabriel
Brian P. Gabriel